# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-279V
UNPUBLISHED

| | |
|---|---|
| GAIL SHELTON,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: May 21, 2021<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Table Injury; Decision Awarding Damages; Pain and Suffering; Influneza ("Flu") Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Bruce William Slane*, Law Office of Bruce W. Slane, P.C., White Plains, NY, for Petitioner.

*Sarah Black Rifkin*, U.S. Department of Justice, Washington, DC, for Respondent.

## RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On February 21, 2019, Gail Shelton filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influneza ("flu") vaccine administered to her on September 7, 2016. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, and after holding a brief hearing on entitlement and damages in this matter, I find that Petitioner is entitled compensation, and I award damages in the amount **$97,500.00**, **representing compensation for actual pain and suffering.**

I.  **Relevant Procedural History**

As noted above, the case was initiated in February 2019. On August 17, 2020, Respondent filed his Rule 4(c) Report. ECF No. 42. Respondent specifically maintained that Petitioner has not established receipt of a covered vaccine. *Id.* at 4-6. Assuming, Petitioner had established receipt of a covered vaccine, Respondent also argued that the evidence preponderated against a finding that the onset of Petitioner's shoulder pain occurred within 48 hours of her vaccination. *Id.* at 7-8. Respondent further asserted that Petitioner also had not provided evidence sufficient to establish causation-in-fact under the relevant standard. *Id.* at 8-10. In an effort to expediently resolve this matter, a briefing schedule was established in advance of an expedited hearing to be convened on entitlement and, if Petitioner prevailed on entitlement, damages. ECF No. 43.

In anticipation of the hearing, the parties filed briefs and other evidence. ECF Nos. 44, 46-47, 49. In sum, Petitioner argued that she had established entitlement to compensation for an on-Table SIRVA claim, and requested $110,000.00 in past/actual pain and suffering. ECF No. 46, 49. Respondent maintained that Petitioner had failed to establish entitlement to compensation. ECF No. 47. In the event I found Petitioner entitled compensation, however, Respondent recommended that I award only $75,000.00 for past pain and suffering. ECF No. 47 at 13.

In March of this year, I proposed this case be set for an expedited hearing on April 30, 2021, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. ECF No. 51. The parties agreed, and an expedited hearing took place via video conference on April 30, 2021 during the monthly SPU Motions Day. ECF No. 52-53; Minute Entry dated April 30, 2021. After the argument, I orally ruled on Petitioner's entitlement to compensation and made a damages determination as well. This Decision memorializes those findings/determinations.

II.  **Factual Findings and Ruling on Entitlement**

   A. **Legal Standards**

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A).

2

In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Factual Findings Regarding Proof of Vaccination

Respondent disputes that Petitioner has established that she received a covered vaccine. However, after consideration of the complete record (including the parties' briefing)[4], I find that Petitioner has offered preponderant evidence to establish that she more likely than not received an intramuscular influenza vaccination on September 7, 2016 in her right deltoid. Ex. 2 at 1-10. Specifically, I find that Petitioner has filed numerous records from her primary care provider, Fetter Health Care Network ("Fetter Health"), documenting her receipt of a flu vaccine on September 7, 2016. *Id.* (The records include: a "patient plan for 9/7/2016" indicating "flu shot given right deltoid" under the "reason(s) for visit" for 9/7/2016 (ex. 2 at 1), a vaccine administration record (ex. 2 at 4), an influenza patient questionnaire[5] (ex. 2 at 5), an immunization summary report (ex. 2 at 6-9), and a health summary (ex. 2 at 10)).

---

[4] For the purpose of brevity, I do not summarize and/or address all records, testimony, or arguments put forward.

[5] This record contains a handwritten date and signature, it appears the handwritten date was changed from 6/7/2016 to 9/7/2016. Ex. 2 at 5.

4

Respondent dismisses these records because they were "generated" on a date subsequent to September 7, 2016, or contain other peculiarities (for example: one record, ex. 2 at 6-9, clearly incorrectly indicates that 34 "doses" of flu vaccine were administered to Petitioner on September 7, 2016). ECF No. 47 at 2-3. Notwithstanding these irregularities – and to be sure Fetter Health's immunization records are not ideally maintained – taken as a whole Petitioner's above-cited vaccination records and subsequent treatment records (see Ex. 2 at 14, Ex. Ex. 5 at 118-119, 343) offer preponderant evidence that she received an intramuscular flu vaccine in her right deltoid on September 7, 2016. Additionally, even if these records were not generated or electronically signed on September 7, 2016, there is no evidence that these records are fraudulent, or that Petitioner did not receive a flu vaccination on September 7, 2016, as these records purport.

### C. Factual Findings Regarding QAI Criteria for Table SIRVA

After a review of the entire record, including all witness testimony offered during the Motions Day hearing, Respondent's Rule 4 Report, the parties' briefs, I find that Petitioner has preponderantly satisfied the QAI requirements for a Table SIRVA. The medical records and affidavits filed in this case are hereby incorporated by reference. ECF Nos. 42, 46-47, 49.

#### 1. Prior Condition

The first QAI requirement for a Table SIRVA is lack of a history revealing problems associated with the affected shoulder which were experienced prior to vaccination and would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i).

Respondent does not dispute Petitioner has met the first requirement under the QAI for a Table SIRVA. Additionally, I do not find any evidence that Petitioner suffered a pre-vaccination history of problems that would explain her post-vaccination shoulder symptoms. Accordingly, I find that Petitioner has met this first criterion to establish a Table SIRVA.

#### 2. Onset of Pain

A petitioner alleging a SIRVA claim must also show that he experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)( XIV)(B)), and that his pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)).

There is no immediate record evidence from the time around the September 2016 vaccination of any reaction. Two months later, on November 17, 2016, Petitioner was

5

seen at the emergency department for an asthma attack, but with no report of shoulder symptoms. Ex. 5 at 14-18. Then, on February 9, 2017 (now approximately five months after her vaccination), Petitioner was seen at Fetter Health with a complaint of right shoulder pain "*after* receiving [her] flu shot last [S]eptember." Ex. 2 at 14. She was assessed with "[c]hronic right shoulder pain" and advised to take ibuprofen and obtain an MRI. *Id.* On examination of her right shoulder, Petitioner was found to have moderate pain with motion. *Id.* at 13.

On June 30, 2017, Petitioner was seen by an orthopedic specialist, Josef Karl Eichinger, MD. Ex. 5 at 343. Dr. Eichinger noted that Petitioner presents with "pain and stiffness in the shoulder since September 2016. The patient thinks that her pain began after she received a flu shot." *Id.* Thereafter, on July 5, 2017, Petitioner presented for a physical therapy evaluation. Ex. 5 at 118-121. This evaluation indicates that the "Date Patient First Became Aware of Symptoms" was September 6, 2017, the date of her flu shot. Ex. 5 at 118. Further, a history obtained at this evaluation records that Petitioner reported the "onset of R[ight] shoulder pain [in] early September 2016 that she relate[d] to getting her flu shot. . . . Pain is described as throbbing and constant." Ex. 5 at 119.

In addition to the records associated with her medical visits above, Petitioner filed appointment and telephone logs from her primary care provider, Fetter Heath. Ex. 10. These appointment logs appear to indicate that Petitioner had scheduled appointments with Dr. Oladimeji on 10/11/2016 (no reason given) and 10/22/2016 for "R[ight] Shoulder pain." Ex. 10 at 9-10. Fetter Health indicates Petitioner was a "no-show" for these appointments, however. Ex. 12 at 3.[6]

Besides these records, Petitioner has offered witness statements to support her onset argument. Exs. 3-4, 9, 13-14.[7] Petitioner's own affidavit alleges that she experienced immediate pain following the administration of her September 7, 2016 flu shot. Ex. 3, ¶1. Petitioner avers that that she tried calling Fetter Health on multiple occasions regarding her shoulder pain beginning the day after her flu shot. Ex. 3, ¶7. Petitioner indicates that she was told by the receptionist that her shoulder "pain was normal and would go away on its own". *Id.*

Thereafter, Petitioner alleges, she continued to call Fetter Health between September 8, 2016 and February 2017, requesting to speak with Dr. Oladimeji, but she never spoke to the doctor, nor did he return her calls. Ex. 14, ¶8. Petitioner indicates that initially she did not seek medical treatment as she was advised that the pain would go

---

[6] Petitioner has also filed a telephone record from Fetter Health Care logging a December 1, 2016 call she made to Fetter requesting medicine for an ongoing cough. Ex. 10 at 15.

[7] An incomplete copy of Petitioner's Supplemental Affidavit dated 7/22/2019 was initially filed as Exhibit 8 and later refiled as Exhibit 14.

away on its own. Ex. 13, ¶9. Later, Petitioner could not get an appointment at Fetter Health – a low cost health care provider that Petitioner could afford – and as did not have health insurance during this time period she could not afford to seek care elsewhere. Ex. 14, ¶11-12. Finally, Petitioner alleges that it would have been unlike her to have cancelled the October 2016 appointments at Fetter Health. Rather, Petitioner indicates that it is her belief that the appointments logged by Fetter Health as "no show," must represent records of her phone calls incorrectly logged as appointments. Ex. 13, ¶10. Petitioner asserts that the first appointment she could get at Fetter Heath, post-vaccination, was an already scheduled follow-up appointment on February 9, 2017. Ex. 14, ¶12.

Petitioner also filed affidavits from both her fiancé and daughter, who aver that that she reported to each of them on the night of her vaccination that she was experiencing shoulder pain. Ex. 4, Ex. 9.

Based on the record as a whole, and in particular the above medical records and affidavits, Petitioner has preponderantly established that the onset of her right shoulder pain was more likely than not within 48 hours of vaccination. To be clear, this is a close finding, given that Petitioner's first medical visit right reporting shoulder pain in association with the receipt of her September 2016 flu shot occurred approximately five months after her vaccination on February 9, 2017 – with no intervening record evidence (beyond witness statements) suggesting she was living with vaccine-induced pain. However, the Act provides a special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

Here, although Petitioner delayed seeking treatment for her shoulder pain, once she sought care she consistently reported – first to her primary care provider, Fetter Health (ex. 2 at 14), then to her orthopedist (ex. 5 at 343), and finally to her physical therapist (ex. 5 at 118-119) – the onset of her right shoulder pain as beginning with her September 2016 vaccination. Additionally, Fetter Health's logs do document that *some* efforts to seek treatment were made by Petitioner in the month following her vaccination (October 2016) – regardless of whether this contact represented scheduled appointments to which Petitioner was a no show (as Fetter Health maintains), or an inaccurately-logged telephone record (as Petitioner believes). Taken as a whole, the evidence weighs in favor of Petitioner (if weakly), and I find that that she more likely that not experienced the onset of shoulder pain within 48 hours of her flu vaccination.

7

However, as discussed below, the timeframe in which a petitioner seeks treatment, along with any gaps in her treatment course, are factors reasonably taken into account when determining damages. *Dirksen v. Sec'y of Health & Hum. Servs*., No. 16-1461V, 2018 WL 6293201, at *10 (Fed. Cl. Oct. 18, 2018)(indicating that while a delay seeking treatment does not necessarily preclude a finding of causation, it is a factor to be considered when determining the severity of a petitioner's pain and suffering). I do so below.

### 3. Scope of Pain and Limited ROM

Respondent has not contested that Petitioner meets this criterion. In addition, the medical records document symptoms only in Petitioner's right shoulder following her flu vaccination. *See, e.g*., Ex. 2 at 14, Ex. 5 at 343. I thus find that Petitioner has demonstrated by a preponderance of the evidence that her pain and reduced range of motion were limited to the shoulder in which the intramuscular flu vaccine was administered.

### 4. Other Condition or Abnormality

The last QAI criteria for a Table SIRVA states that "[n]o other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy)." 42 C.F.R. § 100.3(c)(10)(iv).

Respondent has not contested that Petitioner meets this criterion. Further, I do find that there is evidence of any other condition or abnormality in the medical records that would explain Petitioner's post-vaccination symptoms.

### D. Other Requirements for Entitlement

As stated in the previous section, I find that the onset of Petitioner's right shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this QAI requirement). This finding also satisfies the requirement that the first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the flu vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA and is entitled to a presumption of causation.

Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, however, he or she must also provide preponderant evidence of the

additional requirements of Section 11(c), i.e. receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E).

As indicated above, I have specifically found that Petitioner has demonstrated preponderant evidence of her receipt of a covered vaccination. Respondent does not otherwise dispute that Petitioner has satisfied the remaining requirements of Section 11(c) in this case, and the overall record contains preponderant evidence to fulfill these additional requirements. I therefore find that Petitioner is entitled to compensation in this case.

### III. Damages

#### A. Legal Standards for Damages Awards

In several recent decisions, I have discussed at length the legal standard to be considered in determining damages (including out-of-pocket losses as well as pain and suffering) and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections III and IV of *Leslie v. Sec'y Health & Human Servs.*, No. 18-0039V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) and *Johnson v. Sec'y of Health & Human Servs.,* No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021), as well as Sections II and III of *Tjaden v. Sec'y of Health & Human Servs.,* No. 19-419V, 2021 WL 837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[8]

#### B. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in

---

[8] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

9

this case, including, all medical records, affidavits, the oral argument of counsel at the April 30, 2021 hearing, plus all filings in the case containing fact/record summaries. ECF Nos. 42, 46-47, 49. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Pursuant to my oral ruling on April 30, 2021 (which is fully adopted herein), **I find that $97,500.00 represents a fair and appropriate amount of compensation for Petitioner's pain and suffering.**

One factor immediately relevant to my determination is Petitioner's treatment delay. Petitioner alleges that her pain was severe immediately, but she did not obtain treatment for approximately five months after her vaccination on February 9, 2017. Ex. 2 at 11-15. She then did not obtain any further treatment until over three months later on May 18, 2017, at which time she received a referral for diagnostic testing. Ex. 2 at 60. Thereafter she underwent relatively significant and consistent treatment for her injury for approximately one year, to include: physical therapy,[9] three steroid injections,[10] an MRI scan,[11] and arthroscopic surgery (Ex. 5 at 230-35). But the fact that Petitioner could cope with her injury for such a long period of time counsels in favor of a lower pain and suffering award. Treatment gaps are a relevant consideration in determining the degree of Petitioner's pain and suffering.

The medical records further reflect that Petitioner's SIRVA was only moderately severe. Petitioner's reported pain levels fluctuated over time, and at times were fairly high. Ex. 5 at 343 (Petitioner reported on June 30, 2017 a pain level of 8/10 with 30% subjective use of right shoulder). However, during the course of her treatment she also reported

---

[9] Petitioner engaged in approximately 16 pre-surgery physical therapy sessions (Ex. 5 at 182), and ten post-surgery physical therapy sessions (Ex. 5 at 290-291).

[10] Petitioner received three steroid injections on the following dates: June 30, 2017 (Ex. 5 at 345-46), September 22, 2017 (Ex. 5 at 93), and November 10, 2017 (Ex. 5 at 96).

[11] Petitioner's MRI scan occurred on June 13, 2017. Ex. 6 at 1. The MRI Impression indicated as follows:

> 1. Tendinosis and low grade bursal sided partial thickness tear of both the supraspinatus infraspinatus tendons, with mild bursal sided irregularity. There is also undersurface irregularity of the supraspinatus tendon. No full-thickness tendon tear.
> 2. Marked atrophy of the teres minor muscle, the cause is uncertain. No compressive neuropathy seen.
> 3. Degenerative fraying of the superior and posterior labrum. Irregularity and thinning of articular cartilage in the of the glenoid, no full-thickness cartilage defects.

*Id.*

some relatively low pain levels, particularly following the receipt of a steroid injection. Thus, on August 11, 2017, Petitioner reported her pain level was approximately 3/10, but noted that she had complete relief of pain following her June 30, 2017 cortisone injection until July 19, 2017. Ex. 5 at 67. At her discharge from physical therapy on September 28, 2017, Petitioner reported a pain level of 0/10 following her September 22, 2017 cortisone injection. Ex. 5 at 185. On November 10, 2017, Petitioner's reported pain level was 2/10. Ex. 5 at 97. However, three months later, Petitioner reported an increase in her pain, indicating to orthopedics on February 9, 2018 that she experienced "good relief" following her injection, but it was "short term," her pain was a constant 5, and she was interested in pursuing surgery. Ex. 5 at 219. At that time, it was noted that Petitioner's "quality of life is limited and [she] has exhausted conservative treatment." *Id.* at 222. Accordingly, a plan was made "to proceed with a right shoulder arthroscopy with lysis of adhesions, bicep tenodesis and distal clavicle excision." *Id.*

Petitioner's treatment culminated on March 14, 2018, when she underwent fairly extensive right shoulder arthroscopic surgery. Ex. 5 at 232. Petitioner's post-operative diagnoses included: 1) low-grade partial articular sided supraspinatus tear, 2) synovitis in the rotator interval with adhesions, 3) impingement syndrome with anterolateral bone spur, 4) AC arthrosis, and 5) bicipital tendinopathy. *Id.*

Thereafter, Petitioner made a very good recovery after the completion of ten post-surgical physical therapy sessions. Ex. 5 at 291. At her last physical therapy session on May 10, 2018, Petitioner had met all goals and milestones, and reported that her pain was 0/10 both before and after her treatment session. *Id*. Petitioner sought no further treatment for her shoulder.

In making my determination, I have fully considered Petitioner's sworn affidavits, and those of her fiancé and daughter, which describe the pain experienced by Petitioner over the course of her injury, as well as, the limitations in her exercise of daily functions, work duties, and physical activities attributed to her shoulder injury. Exs. 3-4, 9, 13-14. While Petitioner's affidavits indicate that she experienced some subsequent shoulder pain and limitations, I find that Petitioner's SIRVA, and her associated pain and suffering, was significantly improved at the time of her discharge from physical therapy on May 10, 2018, as described above.

Both parties cite a number of cases in support of their proposed awards in this case. ECF No. 46 at 23, 25; ECF No. 47 at 11-12; ECF No. 49 at 7-8. Of note, they each reference *Dirksen v. Sec'y Health & Human Servs.,* No. 16-1461V, 2018 WL 6293201, *9 (Fed. Cl. Spec. Mstr. Oct. 18, 2018) (awarding $85,000.00 for actual pain and suffering in a claim found "[a]s compared to other SIRVA claims, . . . notable for the significant gaps in petitioner's treatment"). *Dirksen* is a good comparable to the instant case, since that

petitioner also delayed treatment following the onset of her shoulder injury for three months. While the initial delay in *Dirksen* was not as long as that in the instant case, the instant case involves the receipt of multiple steroid injections and a significant surgical procedure – suggesting a slightly higher award is justified herein.[12]

The *Knudson* case is another good comparable. *Knudson v. Sec'y Health & Human Servs.*, No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 for actual pain and suffering). Although the *Knudson* petitioner did not treat for quite as long as Petitioner, that individual also underwent relatively extensive treatment for her shoulder injury – including a surgical procedure and physical therapy. However, unlike the present circumstances, the *Knudson* petitioner promptly sought treatment for her shoulder injury approximately two weeks after her vaccination – making the sum awarded therein too high.[13] I therefore have opted to award a sum falling between the range established by these two cases.

## IV. Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $<u>97,500.00</u>**, **representing compensation for actual pain and suffering.**

This amount represents compensation for all damages that would be available under Section 15(a). The clerk of the court is directed to enter judgment in accordance with this decision.[14]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[12] I agree with Respondent's remark during oral argument that the relevant factors in each case should be considered holistically, and surgery alone should not be determinative of an award. Nevertheless, the need to undergo a surgical procedure is a relevant factor to be considered.

[13] The *Knudson* petitioner also suffered due to her physical difficulty caring for her children – a unique factor not present in the instant case. *Knudson,* 2018 WL 6293381, at *9.

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.